**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

TARGET GENERAL MERCHANDISE, INC.　　:

　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　Plaintiff,　:

　　v.　　　　　　　　　　　　　　:　　Court No. 22-00318

　　　　　　　　　　　　　　　　　:

THE UNITED STATES,　　　　　　　　:

　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　Defendant.　:

_____:

**<u>COMPLAINT</u>**

Plaintiff, Target General Merchandise, Inc., a Division of Target Corporation (Target), by and through its attorneys, Sandler, Travis & Rosenberg, P.A., alleges as follows:

**<u>PARTIES</u>**

1.　　　　Target is a corporation organized and existing under the laws of Minnesota with its corporate headquarters in Minneapolis.  Target is an importer of a wide variety of merchandise including the Easter Eggs that are the subject of this case.  Target is the importer of record of the Easter Eggs that paid the duties assessed on the Easter Eggs.

2.　　　　The defendant in this case is the United States, through U.S. Customs and Border Protection (CBP).  CBP is responsible for classifying merchandise imported into the United States under the Harmonized Tariff Schedule of the United States (HTSUS) and collecting duties on imported merchandise.

**<u>NATURE OF THE ACTION</u>**

3.　　　　This action arises under 19 U.S.C. § 1514(a)(2) to contest CBP's classification of certain Easter Eggs as further described herein and the rate and amount of duties chargeable upon

liquidation of entries containing those Easter Eggs.  Target seeks a refund of all duties unlawfully assessed and paid by Target, plus all interest as provided by law.

4.    This case was commenced upon the timely filing of a summons by plaintiff to contest the denial under Section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, of the protests listed on the summons, the Court thus has jurisdiction pursuant to 28 U.S.C. § 1581(a).

5.    The claimed and assessed tariff provisions of the HTSUS provide as follows:

Subheading:   9505.90.6000: Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof: Other: Other."

Subheading: 3926.40.0090:   Other articles of plastics and articles of other materials of heading 3901 to 3914: Statuettes and other ornamental articles: Other."

## JURISDICTION AND STANDING

6.    Protest Nos. 2704-22-160793, 2704-22-160978 and 3002-22-103986, challenging the liquidations of the entries at issue were timely filed on June 15, 2022, July 6, 2022, and July 20, 2022, respectively.  Thereafter, CBP denied Protests Nos. 2704-22-160793 and 2704-22-160978 on July 13, 2022, and Protest No. 3002-22-103986 on August 5, 2022.

7.    This Court possesses exclusive jurisdiction over this action under 28 U.S.C. § 1581(a), because the action was commenced to contest the denial of a protest under 19 U.S.C. § 1514.

8.    In accordance with 28 U.S.C § 2636(a), this action was timely commenced within 180 days after the subject protests were denied.

9. Target has standing to bring this action pursuant to 28 U.S.C. § 2631(a) because Target filed the protests pursuant to Section 514 of the Tariff Act of 1930, 19 U.S.C. § 1514, which were denied under Section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, and are covered by this civil action.

10. All liquidated duties, taxes and fees were paid prior to the commencement of this action.

## BACKGROUND

11. The merchandise at issue consists of various plastic Easter eggs (the "Easter Eggs" or merchandise at issue).

12. The Easter Eggs were entered at various ports between January and March of 2021.

13. The Easter Eggs are available in a variety of sizes and colors.

14. Below are several representative depictions of the variety of Easter Eggs at issue:



15.     The Easter Eggs are either three-dimensional representations of a traditional, decorated Easter egg or an Easter bunny.

16.     The Easter Eggs are hollow and designed to snap in half for filling with small Easter toys and/or treats.

17.     Plaintiff advertises, markets, and sells the Easter Eggs as decorations for use during the Easter season.

18.     The Easter Eggs are principally used as Easter decorations or to temporarily conceal Easter toys and/or treats.

19.     The Easter Eggs are made from thin, inexpensive plastic.

20.     For more than 35 years, CBP held that substantially similar Easter Eggs were articles closely associated with Easter and classified as festive articles. *See, e.g.*, NY 860622 (Mar. 12, 1991) (classifying hollow plastic eggs sold in units of twenty-four as festive articles in subheading 9505.90.6000); NY K87778 (July 15, 2004) (classifying plastic colored eggs sold in units of six as festive articles because "plastic colored eggs are considered appropriate symbols of Easter and will be marketed and sold as items used for the home for the Easter holiday"); NY D82818 (Oct. 8, 1998) (classifying fillable colored plastic eggs sold in units of eight that were decorative as well as utilitarian in subheading 9505.90.6000, since "[d]ecorated eggs are traditionally used in celebration of and for entertainment on Easter[, and i]t has been established that decorated eggs are an accepted symbol of Easter, a recognized holiday"), HQ 961700 (Feb. 19, 1999) (holding that egg-shaped containers were "decorative item[s] used in an Easter egg hunt," "a well-documented form of entertainment for the holiday, Easter," and classifying the egg-shaped containers as festive articles of heading 9505).

21.     However, in HQ H043742 (Apr. 19, 2019), CBP changed its position, determining that fillable, plastic Easter Eggs are not so "intrinsically linked to Easter, the Christian holiday celebrating the Resurrection of Jesus from the dead, that 'their use during other times would be aberrant'" and were therefore not classifiable as festive articles under heading 9505.

22.     In HQ H043742, CBP determined that the Easter Eggs "are designed to facilitate the consumer's personal transportation and storage of candy, and other small food or non-food items, and are usable at home, in a car, in an office, in a garden and in a variety of other locations."

23.     In HQ H043742, CBP determined that the Easter Eggs are classified under subheading 3926.40.0090, "a residual provision [which] covers articles of plastics not elsewhere specified or included."

24.     Plaintiff entered the Easter Eggs under subheading 3926.40.0090 in accordance with HQ H043742.

25.     CBP liquidated the Easter Eggs under subheading 3926.40.0090, dutiable at 5.3% *ad valorem*.

**COUNT I**

**The Easter Eggs Are Properly Classified In Heading 9505 As
Festive Or Other Entertainment Articles**

26.     Plaintiff incorporates paragraphs 1 through 25 by reference.

27.     Subheading 9505.90.6000 covers "[f]estive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof: Other: Other."

28.     In *Park B. Smith, Ltd. v. United States* 347 F.3d 922 (Fed. Cir. 2003), the U.S. Court of Appeals for the Federal Circuit determined that "festive articles" classifiable under subheading

5

9505 are articles that are (1) closely associated with a festive occasion, and (2) used or displayed principally during that festive occasion.

### i.    The Easter Eggs Are Closely Associated With Easter, A Festive Occasion

29.    Easter is a festive occasion.

30.    Easter eggs and bunnies are closely associated with Easter.

31.    In *Park B. Smith*, the Federal Circuit affirmed this Court's determination that Easter eggs and bunnies are recognized symbols closely associated with the festive occasion of Easter. 347 F.3d at 929 ("The court correctly ruled that articles with symbolic content associated with a particular recognized holiday, such as Christmas trees, Halloween jack-o-lanterns, or bunnies for Easter, are festive articles.").

32.    CBP personnel use depictions of Easter eggs and the Easter bunny in public Easter Holiday messaging:





Port Director Sal Ingrassia (@CBPPortDirJFK), Twitter (n/k/a X) (Apr. 17, 2022, 8:17 AM), https://x.com/CBPPortDirJFK/status/1515665831753048064 (last accessed Apr. 9, 2026).



Director of Field Operations Francis J. Russo (@DFONewYork), Twitter (n/k/a X) (Apr. 17, 2022, 2:33 PM), https://x.com/dfonewyork/status/1515760324208734209 (last accessed Apr. 9, 2026).

33.    The White House uses Easter eggs and depictions of Easter eggs and bunnies in its public Easter Holiday messaging and celebrations, including the annual White House Easter Egg

Roll. The White House, "A Timeless Tradition: The White House Easter Egg Roll" https://www.whitehouse.gov/white-house-easter-egg-roll/ (last accessed Apr. 9, 2026).

34. The Easter Eggs are therefore closely associated with the festive occasion of Easter.

**ii.    The Easter Eggs Are Principally Used Or Displayed During The Easter Holiday Season**

35. The Easter Eggs are principally used or displayed during the Easter season for Easter decoration, Easter egg hunts, Easter egg rolls, or to hold Easter toys and/or treats.

36. Target advertises the Easter Eggs only during the Easter season.

37. The Easter Eggs are included with other seasonal Easter Holiday décor in Target's advertising materials including Easter baskets and Easter grass. For example:



38. The Easter Eggs are sold in Target's stores only during the Easter season.

8

39.     Target uses the seasonal section of its stores to display and sell seasonal and holiday related items.

40.     Target sells the Easter Eggs in the seasonal section of its stores.

41.     The Easter Eggs are sold at retail level in conjunction with other Easter decorations, Easter candy, and Easter toys.

42.     Target removes Easter Eggs from its shelves and advertisement materials after the Easter Holiday season has concluded.

43.     Ultimate purchasers expect to use the Easter Eggs for decoration during the Easter Holiday season or to temporarily hold toys and/or treats during Easter Holiday celebrations.

44.     The Easter Eggs are made of thin, inexpensive plastic to allow for easy access to their interior cavity where toys and/or treats can be held.

45.     Because the Easter Eggs are made of thin, inexpensive plastic, they are often disposed of by ultimate purchasers after their use during the Easter Holiday season, or stored until needed for use at the next Easter Holiday season.

46.     Because the Easter eggs at issue are closely associated with, and principally used or displayed during, the Easter Holiday season, they are properly classified as festive or other entertainment articles under subheading 9505.90.6000.

### iii.     Note 1(w) Does Not Exclude The Easter Eggs From Chapter 95

47.     The Easter Eggs are not excluded from classification under subheading 9505.90.6000 by Note 1(w) to Chapter 95.

48.     Note 1(w) to Chapter 95 excludes "[t]ableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, kitchen linen and similar articles having a utilitarian function" from being classified under any Chapter 95 heading.

49.     The Easter Eggs are not tableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, or kitchen linen,

50.     The Easter Eggs are not articles similar to tableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, or kitchen linen.

51.     CBP agrees that the Easter Eggs are not household articles or similar to such articles because it classified the Easter Eggs under heading 3926 as "[o]ther articles of plastics" rather than under heading 3924 as "[t]ableware, kitchenware, other household articles and hygienic or toilet articles, of plastics."

52.     Moreover, an article is excluded by Note 1(w) to Chapter 95 only if "its principal purpose is utilitarian in nature." *In Zone Brands, Inc. v. United States*, 456 F. Supp. 3d 1309, 1317 (Ct. Int'l Trade 2020). "Some ancillary utility does not necessarily render merchandise improperly classified under Chapter 95." *Id.*

53.     The Easter Eggs do not have a principal utilitarian function like tableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, or kitchen linen do.

54.     CBP agrees that the Easter Eggs do not have any principal utilitarian function because it classified the Easter Eggs in subheading 3926.40.00, a provision covering "[s]tatuettes and other ornamental articles."

55.     The Easter Eggs therefore do not meet the terms of Note 1(w) to Chapter 95.

**COUNT II**

**The Easter Eggs Are Not Classifiable Under Heading 3926,
A Residual Provision For Other Articles of Plastics**

56.    Plaintiff incorporates paragraphs 1 through 55 by reference.

57.    CBP classified the Easter Eggs under subheading 3926.40.0090 as "[o]ther articles of plastics …: Statuettes and other ornamental articles: Other."

58.    Note 2(y) to Chapter 39 excludes "[a]rticles of Chapter 95" from classification under any heading of Chapter 39, including heading 3926.

59.    Because the Easter Eggs are closely associated with, and principally used during, the Easter Holiday season, they are classified as festive or other entertainment articles under subheading 9505.90.6000, which falls within Chapter 95.

60.    The Easter Eggs, being "[a]rticles of Chapter 95," are therefore excluded from in Chapter 39 by Note 2(y) to Chapter 39.

61.    Additionally, heading 3926 is a residual, catch-all provision for articles of plastics that are not elsewhere specified or included in the HTSUS.  *See* Explanatory Note 39.26 ("This heading covers articles, not elsewhere specified or included, of plastics …."); *see, e.g.*, NY N348691 (May 20, 2025) ("Heading 3926 is a residual provision and is precluded from consideration if a good is specified or included elsewhere.").

62.    Because the Easter Eggs are included in heading 9505, they cannot be classified under the residual heading 3926.

## PRAYER FOR RELIEF

**WHEREFORE**, Target respectfully requests that this Court enter a judgment in favor of Target and against the United States; overrule the denial of Target's protests; order CBP to reliquidate the subject entries at the rate, value and amount of duty asserted by Target in its protests with a refund of duties, plus all interest as provided by law; and order such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

By:    /s/ Luke Mathers
Marilyn-Joy Cerny
Robert Lyons Grasing
Luke Mathers
**SANDLER, TRAVIS & ROSENBERG, P.A.**
286 Madison Avenue, Suite 1200
New York, New York 10017
(212) 549-0160
lmathers@strtrade.com

Dated: April 9, 2026    *Attorneys for Plaintiff*

12